Good morning, Your Honors, and may it please the Court, Johanna Crawford, Certified Law Student with the UCI Law Appellate Litigation Clinic, under the supervision of Katherine I'll be addressing the adverse credibility determination, and my co-counsel will be addressing the merits of Ms. Prospere's cat claim. And we'd like to reserve two minutes for rebuttal. And please watch the clock. Thank you. At issue in this appeal is a negative credibility determination supported by nothing more than two alleged inconsistencies, the first of which was not an inconsistency, but actually an ambiguity in translation, which Respondent does not refute, and the second of which was a trivial inconsistency that had no bearing on Ms. Prospere's credibility. Alone or together, these two inconsistencies are insufficient to support an adverse credibility finding, and remand is required. The first inconsistency identified by the BIA concerned to pose an inconsistent statement about the type of weapons her attackers used. Her remand declaration stated that the perpetrators had knives, bottles, rocks, and machetes. During her merits hearing, while giving a narrative account of the attack, she stated that they had rocks, arms, and bottles. This is not an inconsistency at all, because the term arms encompasses knives and machetes. In Kumar v. Garland, the score held that one recounting them might simply be more detailed than another does not mean that the statements are inconsistent. On cross-examination, Government Counsel asked Ms. Prospere if the assailants had any weapons in addition to rocks and bottles, because he disregarded her inclusion of the word arms in her testimony. Her response was that she wasn't sure because she, quote, didn't verify whether they had other weapons, like arms, to shoot. And the... Was your translation issue raised to the BIA? The translation issue was not raised to the BIA. So can we consider it, or was it forfeited? This court can't consider it, because any kind of discrepancy that results from a mistranslation or a miscommunication cannot support an adverse credibility finding. Do you have a case where the argument wasn't raised to the BIA in this translation, and we said that we could consider it? Well, under ACME, this court stated that any discrepancy that possibly resulted from a mistranslation cannot support an adverse credibility finding, and the court didn't state that. It had to be raised to the BIA before being raised on appeal. But was it raised in that case? I am not 100% sure, Your Honor, but I know that it was specifically on appeal that the court concluded that a mistranslation cannot support it. But that doesn't answer the question about whether it first has to be raised to the BIA. So your citation of the case is interesting, but not detrimental. So when the I.J. concluded from that specific response that she had a failure to remember that her attackers also had knives and machetes, that was a mischaracterization of her testimony, because she believed that she was being asked whether the attackers also had guns. So she doesn't really answer that way. So when the, I guess it's the government lawyer, says, why didn't you tell the court that they also had knives and machetes? Her answer isn't, well, I thought that's what arms meant. She says, I wasn't asked if they had knives or machetes. Correct. So she believed that she was being asked specifically whether they had guns or firearms. She didn't believe that she was being asked whether they had any knives in addition to rocks and bottles, because she already stated that they had arms. So that's a different argument than saying she thought that she was talking about knives, that she had included knives and machetes. Well, the argument is that she misinterpreted the question. She didn't interpret the question the way that government counsel intended to ask because of the ambiguous translation, because the term that means weapons can also mean, more specifically, weapons that are capable of shooting. In response to the question, did they have any other weapons, she said, I'm not sure because I didn't verify whether they had other weapons like arms to shoot or anything else, which seems to include knives and machetes. So she's saying she didn't verify whether they had any other weapons. So why can't we interpret that as an inconsistency? So when asked again, the government counsel followed up and asked. She said, I wasn't asked if they had knives or machetes. So she interpreted that. She states clearly that she interpreted the question as whether they had guns or firearms. So she says, or anything else. Arms to shoot or anything else. What does or anything else mean in that context? So I think anything else would be anything in addition to what she just stated previously in her narrative, which was rocks, bottles, and arms. And arms here would encompass, it would be consistent with the fact that they were armed with knives and machetes. And if I could just quickly address the second inconsistency identified by the BIA. This was a trivial inconsistency that is insufficient to form the substantial evidence necessary here. This could have been simply a result of human error or a lapse in memory, which under Trust the Beholder cannot support. And as a result of finding that trivial inconsistencies were like typos or a scrivener's error, this wasn't like a typo or a scrivener's error, was it? Well, in Trust the Beholder, the inconsistency that was actually found trivial was, the petitioner stated that he had been staying with his uncle before coming to the U.S. But in his application for leave, he wrote down his parents' address when asked for the address of where he had stayed prior to coming to the U.S. And the tort held that that could have been a simple error that he included on his application. Similarly here, it could have been a simple error that on her application she stated that she went to her neighbors because in her testimony she reaffirmed six times that it was, in fact, her neighbors who came to her. And if I may, I'd like to turn it over to my co-counsel. Thank you. Good morning, Your Honors. David A. Kemp for Petitioner for Spare. And I will argue the caddish of this appeal. As an initial matter, even if Ms. Prospero is found not credible, this doesn't necessarily bar her from prevailing on her CAT claim based off of country conditions evidence that were submitted as part of the administrative record. This catechumal asks this Court to decide on two core issues. The first is whether the Board's threadbare opinion gives this Court a sufficient basis for it to actually conduct its review, or excuse me, give this Court a sufficient basis of the Board's decision so that this Court can conduct its review. And the second is whether the Board considered all evidence, including country conditions evidence, as required by CAT's implementing regulations and this Court's jurisprudence. Failure to do either one of these things on its own is a legal error and requires remand, and here the Board failed to do both. First, the Board's one-paragraph CAT section is a threadbare boilerplate opinion that is devoid of any actual application of the facts and the IJA's reasoning, and that doesn't give this Court a basis of its decision. An opinion is boilerplate and threadbare when it contains a general recitation of the legal standards but doesn't contain reference to any facts in the record or parts of the IJA's reasoning that the Board relied on. Here, the Board's CAT section is a single paragraph that starts and ends with a sentence that states that it agreed with the IJA's decision, followed by general legal standards pertaining to CAT, but there's no mention of any facts or parts of the IJA's reasoning to indicate what the Board relied on and how it got to its decision. For this reason, the Board's opinion should be remanded with instructions to clarify the basis of its reasoning so that this Court can conduct its review. Second, the Board's failure to mention highly probative or potentially dispositive evidence indicates that it did not consider all evidence, including country conditions evidence, as required. For this reason, the Board's opinion should also be remanded with instructions to consider all evidence, specifically the country conditions evidence that Ms. Prospero submitted. The regulations in this Court's jurisprudence have emphasized that all evidence, including country conditions evidence, must be considered, and especially when corruption is an issue in the claim, the Board must also examine the efficacy of the government's efforts to combat these acts of torture, as well as the impact of corruption on the government's efforts to combat these tortured acts. When an opinion fails to mention this type of evidence, it is legal error and must be remanded. Here, this is exactly what happened, and for this reason, the Board's opinion should be remanded with instructions to consider all evidence. Do I save some time for rebuttal? Yes, Madam Your Honor. Save some time for rebuttal. Is there remaining time for rebuttal? Thank you. We'll hear from the government. Good morning, Your Honors. My name is Linda Doe, and I represent the people who responded, the United States Attorney General. Here, substantial evidence supports the agency's denial of relief and protection, because Petitioner set forth an evolving claim regarding the single incident of harm she claimed occurred in 2009 in Haiti, a country which she thereafter remained for years without further harm. Specifically, Petitioner claimed that she had been harmed by two persons, Mr. Raphael and Mr. Joseph, due to her failure to join the Haiti In Action political party. She further alleged that the government was unable and unwilling to protect her, despite the complaint that she had lodged. However, as the agency held, her claim was not credible, where her testimony did not coincide with her supporting evidence. First, Petitioner's claim evolved regarding the weapons involved. In her declaration and written application, she specified that the odds came upon her with rocks, bottles, machetes, and knives. In her testimony before the immigration judge, she claimed that they came upon her with arms, rocks, and bottles. On past examination, when requested to clarify as to the presence of any other weapons, she responded that she did not verify whether the perpetrators had other weapons like arms to shoot or anything else. The omission of knives and machetes is material in this instance, because she substituted bladed weapons for firearms, which enhances her claim when it includes weapons that elicit greater fear. Did she just lose her case because she failed to mention the word machete, or is it more than that? It's more than that, Your Honors. Again, she supplanted and increased her claim by supplanting bladed weapons such as knives and machetes for firearms. It is your contention that she believed the following question about other weapons doesn't account for the original omission of knives and machetes from her own narrative as to why she fled Haiti. Did she testify, though, about the firearms? Right? She just left out the machetes and knives. The firearms was never mentioned in her original application or declaration. Okay. The firearms was raised for the first time in her testimony. Accordingly, this is a material inconsistency, which supports the agency's adverse credibility determination. And her explanation, while plausible, does not compel a finding of veracity. Ms. Yoma, I understood your learned friend to say that there was some agreement between you and her, so that there was indeed a translation error. Did I misunderstand that? Your Honors, the offer of multiple possible translations was not set forth before the Board of Immigration Appeals. However, Petitioner did claim that she believed the question about other weapons to be in regards to firearms. But again, this does not account for her initial omission of knives and machetes from her initial testimony. But she wasn't asked about arms in that question. She was asked about other things. Yes, Your Honors. In the initial omission, it was just in her broad narration as to why she had left. She was recounting the incidents of the 2009 alleged assaults, and that was her claim that she finishes that floor. Therefore, any response to any question thereafter is not real pertinent or does not account or explain why she omitted it in her original testimony. So, you know, again, in soliciting and trying to find out why she had omitted that, you know, omitted such details, she claimed that she believed the following questions were about guns and firearms, but she didn't explain why she had omitted it from her original testimony. She did not claim that her answer, claiming firearms, meant knives and machetes. I apologize for that. Petitioner did not make that argument or claim before the immigration judge or in her appeal to the Board. Second, petitioner did not testify consistently as to the events that followed. In her written declaration, she claimed that she fled and facilitated her own rescue by fleeing to her neighbor's home. However, in her testimony, she claimed that she screamed for help and neighbors came to her aid. She did not contest this inconsistency in the opening brief to the court. She claimed that the consistency was trivial, again, stemming from improper memory, human error, or possibly a language barrier. However, she did not exhaust these arguments to the Board in her appeal to the Board. Additionally, in her appeal, the petitioner claimed that the trauma was so great that she was able to recall details, including the exact date of the incident, nine years later. So, again, it cuts against her argument in the opening brief. Additionally, this court has held that minor inconsistencies, which bear upon a petitioner's veracity, can be the basis of an adverse credibility determination. And in this instance, the inconsistency is not trivial where it pertains to her reason for departing Haiti and the sole incident of harm she claims had occurred. Finally, the agency also noted that there was another inconsistency. Petitioners claimed that the government was unable and unwilling to protect her, was not supported by her, or contravened her evidence of support. While the Board did not expressly mention this third inconsistency, it held that the immigration judge's overall credibility, adverse credibility determination, was supported by the evidence and was not clearly erroneous. This is reflected in the Board's decision at page 3, citing pages 51 through 55 of the immigration judge's decision, which includes this third inconsistency. The petitioner claimed that officials did not take her complaint seriously and made no effort to locate the perpetrators. However, she later testified that officials came to her home, followed up with paperwork, and heard her complaint. In support, she provided an abstract of minutes revealing that not only were Mr. Rafael and Joseph located, they had been questioned and denied the charges against them. When asked to explain the inconsistency, the petitioner claimed that the perpetrators were simply not there and that the judge had posed those questions to her and her witnesses. The BIA didn't directly address the attributes, relying on a page-range citation, is that right? The Board upheld the IJ's adverse credibility determination. Right, but we've said that we'll only look at the issues the BIA specifically relied on. Your Honors, this Court recently held in Colugo v. Garland 94F4 at 1100-1101 that the IJ's adverse credibility determinations and the facts relied on are part of the record. And the Court reviews all those facts, regardless of whether the Board relies on it in its substantial evidence review. The Court recently spot-filed a 28-J letter citing this new decision on Friday, April 5, 2024. Accordingly, the third inconsistency would be reported for review. Finally, substantial evidence supports the agency's denial of cap protection because, as the agency held, the petitioner was not credible and did not provide independent, objective evidence to sustain her burden of proof. Whereas here, she was not tested credible, she did not show past torture, or that anyone she was informally possessed with an interest in her. The record further reflects that the petitioner was able to internally relocate and reside in Haiti for years after the 2009 incident. Although the petitioner submitted evidence or background and country conditions evidence reflecting abuse of detainees and suspects, she did not show how that was pertinent to her particular circumstances, such that she possessed a clear probability of torture. And finally, the petitioner did not show that the government would acquiesce to such torture, where she presented evidence that the government had investigated her claim and heard her complaint against the persons that she had feared. A lot of the foregoing substantial evidence in the record supports the agency's denial of asylum, withholding, and removal in cap protection, and the Court should deny the petition for review. Are there any other additional questions, Your Honors? Apparently not. The given out response is brief. Thank you. Thank you for your argument. You have a few seconds left for rebuttal. Thank you. I'd like to start by saying that, so she did raise to the BIA that the statement about arms was not inconsistent with the second statement, and the statements are not inconsistent on their face. The translation inconsistency is simply, which is subject to judicial notice. It simply helps to explain how the ambiguous testimony occurred. And so it's not really a separate argument. It's simply meant to bolster the argument that the two statements are not inconsistent. And also, this assumption that government counsel makes that arms must be synonymous with firearms is incorrect. She never stated that they have firearms or guns. And I see that I'm out of time. Thank you. We thank both parties for their arguments. The case of Maurice Prosper v. Garland is submitted. We thank the law school for taking on this case. And we'll next hear our argument.
judges: Siler, BEA, IKUTA